OPINION OF THE COURT
Paul A. Victor, J.
Relief Sought
Plaintiffs counsel seeks to withdraw his representation of the plaintiff. The motion is denied for the reasons which follow.
*604 An Issue of Practical Significance and Public Importance
What notice and due process obligations should be imposed upon an attorney seeking to withdraw as counsel under CPLR 321 (b) (2)?
Background
Under the IAS system in effect today, the court takes a proactive approach in moving pending cases toward final disposition. Those cases which are not placed on the trial calendar by the filing of a note of issue are placed on a CPLR 3216 calendar, at which the court itself serves a notice requiring that a note of issue be filed. Cases on the trial calendar are scheduled for trial, and not permitted to remain pending indefinitely.
Because of this court initiative, counsel are compelled to actively litigate cases which in the past might have been permitted to languish, either for lack of clear merit or for other reasons. In addition, as a result of this initiative, this court has recently been inundated with motions by counsel to withdraw. In many of these cases, counsel is not prepared to actively litigate the case because, among other things, counsel has purportedly lost touch with and cannot locate the client.
The plaintiff’s bar generally appears not to be aware of its ethical obligations with respect to motions to withdraw; and most attorneys are not aware of the efforts which must be made to locate a client in order to effectuate service of the motion. Thus, it is for the court, depending on the circumstances presented by each case, to fashion the appropriate method of service and notice to the client in a manner which comports with due process.
As a guide to the bar, the court makes explicit the procedures it has, and will, require in these instances.
Facts and Legal Argument
This motion was brought by order to show cause returnable June 29, 2006. In support of the application, counsel stated that plaintiff has not returned phone calls nor communicated with counsel in over two years, following an incident at which “irreconcilable differences” arose between counsel and plaintiff. The exact nature of this occurrence is not set forth in the moving papers.
The court directed service of the order to show cause on the plaintiff “by personal delivery pursuant to CPLR 308 (1).” On the return date of the order to show cause, counsel submitted *605 the affidavit of a process server which stated that the plaintiff could not be located at the address at which service was attempted (presumably a residence address from counsel’s file); indeed, a neighbor allegedly stated that the plaintiff had moved.
Instead of denying the application for failing to abide by its service provisions, the court, at counsel’s request, adjourned the application to September 7, 2006, to permit counsel to provide the court with a supplemental affidavit setting forth all “due diligent” efforts to locate the plaintiff and/or plaintiffs relatives. At that time, in accordance with the usual custom and practice of the court, the court provided plaintiff with written guidelines as to the requirements of a “due diligence” search of Internet and public resources (see the materials annexed to this decision as Appendix A). In addition, the court instructed counsel that if, after diligent efforts had been made, plaintiff could not be located, an alternative means of service (e.g., publication and/or service on a close relative) would be permitted. Rather than following the court’s instructions, counsel affixed a notice of motion to the original order to show cause and supporting papers, setting forth September 7, 2006 as the return date, and without the court’s approval, proceeded to “serve” the “motion” by delivering a copy to a person identified as “Lisa Wyrick,” identified as a “co-tenant,” at a specified address, and by a subsequent mailing to the same address. Significantly, there was no affidavit or other submission indicating why service was made at the new address, or why it was believed that this address constituted plaintiffs residence.
The court accordingly made a record. Counsel stated that Lisa Wyrick was identified in the complaint in the action as plaintiffs “girlfriend.” A copy of the complaint was not provided to the court, nor did counsel explain why he believed that the plaintiff had been or was cohabitating with Ms. Wyrick in 2006, although he insisted that such was the case. Counsel, evidently frustrated at the court’s line of questioning, stated,
“If your Honor tells me to have the process server question Miss Wyrick the next time he is at the door and put that in his affidavit, I will do that. My only problem here is that I now have this client, who is not communicating with me, that I want to help, that I believe in this case, that I can’t reach him.”
Law Relating to Motions by Counsel to Withdraw
An attorney may withdraw from representing a client on good and sufficient cause, upon reasonable notice to the client (see, *606 Matter of Williams v Lewis, 258 AD2d 974 [4th Dept 1999]; Le-Min v Central Suffolk Hosp., 169 AD2d 821 [2d Dept 1991]; Búucaro v Keegan, Keegan, Hecker & Tully, 126 Misc 2d 590 [Sup Ct, NY County 1984]; Matter of Dunn [Brackett], 205 NY 398 [1912]).
An attorney does not have an unfettered right to unilaterally withdraw. Good cause is required, to be determined, ultimately, by the court. As was recently stated in Countryman v Watertown Hous. Auth. (13 Misc 3d 632, 633 [2006]):
“Generally, there are three primary reasons allowing withdrawal of an attorney from a case: failure of a party to remain in contact with counsel; deterioration of the attorney/client relationship; nonpayment of legal fees (see Tartaglione v Tiffany, 280 AD2d 543 [2001]; Lake v M.P.C. Trucking, 279 AD2d 813 [2001]; Galvano v Galvano, 193 AD2d 779 [1993]). The submission does not set forth any of the foregoing reasons. The intent of the rules requiring permission to withdraw is grounded on some client conduct that substantially interferes with the attorney-client relationship (see Kiernan v Kiernan, 233 AD2d 867 [4th Dept 1996]). No such showing has been made here.
“The Court holds that the fact that a lawsuit is of questionable liability, limited damages, and a likely unfavorable trial result is not the type of impairment of the attorney-client relationship that permits withdrawal of counsel. Once the representation is undertaken by the attorney, the fact that the case does not settle is not a valid ground to permit withdrawal. There are even cases where such permission has been denied even when the client has consented to discontinuance of the action (see Matter of Seventh Jud. Dist. Asbestos Litig. 1 Misc 3d 279, 764 NYS2d 168 [2003]), although that issue is not addressed here.”
Conflicts of interest, and a failure to communicate with the attorney, may be added to the list of reasons which may justify counsel’s withdrawal. A client who fails to respond to communications from his or her attorney may render continued representation unreasonably difficult. (See Bok v Werner, 9 AD3d 318 [1st Dept 2004]; see also, Tartaglione v Tiffany, 280 AD2d 543 [2d Dept 2001].)
This court frequently encounters cases in which a client has allegedly failed to communicate with counsel, and in which *607 counsel has simply lost track of the whereabouts of the client. In such cases, the court insists on diligent efforts to locate the client. All too frequently, protestations by the attorney that the client cannot be located are proved incorrect after the insistence of the court that a thorough and diligent search be undertaken. Often, when the client is located and proper notice is given, the clients appear, and the motion is either withdrawn, or the client given an opportunity to obtain new counsel. This procedure accords with CPLR 321 (b) (2), which states:
“An attorney of record may withdraw or be changed by order of the court in which the action is pending, upon motion on such notice to the client of the withdrawing attorney, to the attorneys of all other parties in the action or, if a party appears without an attorney, to the party, and to any other person, as the court may direct.”
In promulgating CPLR 321 (b) (2), the Legislature followed the 1980 Report of the Advisory Committee on Civil Procedure. The Advisory Committee believed that the requisite notice was best shaped by the court based on the particular circumstances:
“The present subdivision (b) of CPLR 321 provides for a change of attorney by the filing of an appropriate consent, and, when consent is lacking, by court order. Some courts have not permitted a mere motion to be used to obtain the order, but have required that a formal special proceeding be brought under Article 4 of the CPLR. In either instance the question of whom to notify of the motion or special proceeding is not addressed.
“The Committee proposes to divide the present subdivision (b) into two paragraphs. The first, paragraph 1, would cover the change of attorney by consent and would make mere linguistic adjustments to set the provision up as a separate paragraph.
“The gist of the Committee’s proposal is in the addition of paragraph 2. This one addresses the change of attorney requiring court permission because consent has not been forthcoming. The provision sets forth that the procedure for the change shall be a mere motion, thus clarifying that a special proceeding need not be brought for this purpose. And rather than attempt to set forth whom to notify, the amendment leaves it to the court to determine. It does this *608 by requiring the motion to be ‘on such notice to such persons as the court may direct’, i.e., it contemplates the procedure of an order to show cause. This will enable the court to determine, on a case by case basis, who shall be notified, and how. There may be many parties, and the action may have been quiescent for a time. Leaving it to the court to determine whom to notify, and by what method, permits the factors applicable to the individual case to be weighed. One obvious person to notify is of course the client, and it is contemplated that the client will be among those notified. The method of notification, however, in respect of the client as well as all others who are to receive notice, is left to the court. The person making the motion would always do well to advise the court, in affidavits accompanying the application for the order to show cause, of all factors pertaining to the giving of notice.” (1980 Report of Advisory Comm on Civ Prac, reprinted in 1980 McKinney’s Session Laws of NY, at 1931-1932 [emphasis added]; see Wong v Wong, 213 AD2d 399 [1st Dept 1995] [in promulgating the subject statute, the Legislature declined to specifically delineate the manner in which service of the required notice was to be effected; instead, the Legislature determined that the manner of service was best left to the court, whose discretion was to be exercised on a case-by-case basis].)
In Wong v Wong (supra, 213 AD2d 399 [1st Dept 1995]), the Appellate Division ultimately upheld notice on an application by an attorney to withdraw based upon notice to the client by (1) service by certified mail, return receipt requested, to plaintiffs last known address, and (2) service at the plaintiffs parents’ house. In permitting service in this manner, the Court specifically noted that counsel had explained why this manner of service had been requested. In addition, the Court took note of the fact that substantial efforts, albeit ultimately unavailing, had been undertaken in a good faith effort to locate the client:
“In this case, the plaintiff’s counsel sought to withdraw his representation because he had not been in communication with the plaintiff for approximately four years and all of his substantial efforts to locate her had been wholly unavailing. The order to show cause and accompanying affirmation by which the attorney made his application speci *609 fied that the plaintiff was to be served with the requisite notice by certified mail, return receipt requested. Specifically, a copy of the papers submitted by the attorney were to be sent to the plaintiffs last-known address, as well as to her parent’s residence. In addition, the attorney’s affirmation recounted the substantial efforts which he had expended in attempting to locate the plaintiff. In this manner, the attorney advised the court to which the order to show cause was presented of all the factors pertaining to the giving of the required notice (see, 1980 McKinney’s Session Laws of NY, at 1931-1932). Therefore, under the facts of this case, we conclude that the Judge who signed the order to show cause acted well within the broad discretion vested in him by the Legislature in permitting the attorney to proceed via service by certified mail, return receipt requested. Accordingly, the court which adjudicated the merits of the attorney’s application erred in denying the requested relief on the ground that it was not satisfied that the plaintiff actually received notice of counsel’s application.” (213 AD2d at 400 [emphasis added].)
Requirements of a Diligent Search for a Missing Person
As noted earlier, in cases in which it is alleged that the client cannot be located, it is the court’s practice to supply counsel who seeks to withdraw, with the written materials which provide some guidelines as to the efforts which counsel should make to locate the client (see Appendix A). All too frequently, when an order to show cause is returnable, withdrawing counsel are surprised to discover that the court insists on some mechanism of service designed to give actual notice to the client, or an explication as to why such service could not* and cannot be effectuated. Counsel’s efforts frequently consist of nothing more than addressing a letter to the address contained in counsel’s *610 file and/or a few phone calls to the telephone number contained in the file, each of which counsel knows is no longer valid.
Of course, as noted above, a client has an obligation to communicate with counsel, and a client who refuses to do so provides a just basis for counsel to seek to withdraw. The reality is that clients frequently move without notifying counsel. Some degree of responsibility must be placed on counsel to keep the lines of communication open; and to initially obtain information (such as the names and addresses of relatives) so that some form of contact is always available. Often, counsel has not written to or called the client for a number of years, before suddenly moving to withdraw.
A diligent search begins with the information counsel has gathered and placed in the file. One would expect that counsel would obtain a Social Security number, employment information, and at least some alternate phone numbers or alternate contact persons. The court is frequently surprised to discover that counsel has failed to gather any information other than a single address and a single phone number.
The sources set forth in the materials annexed in the Appendix are numerous. At the least, public sources such as the post office, Board of Elections, and Department of Motor Vehicles should be contacted. If the client’s Social Security number is known, a formal request may be made to the Social Security Administration, upon payment of the requisite fee, to have a letter forwarded to the missing person. That procedure is also set forth in the materials contained in the Appendix. Resources to locate missing persons are available on the Internet.
The foregoing avenues must be explored before the court will accept counsel’s statement that the client cannot be located. The court often finds that, indeed, when a diligent search is conducted, the client is in fact located. When diligent efforts have been made and neither the client, his relatives nor a contact person can be identified, the court may consider publication as a means of service of the last resort, which generally will consist of the publication of a notice in a local newspaper once in each of two successive weeks.
Discussion
This court does not dispute that the failure of the client to maintain contact with the attorney may provide a basis for counsel to withdraw, or that service may be made at the last known address together with service upon a relative. (See Wong *611 v Wong, supra.) The court is reluctant to authorize service merely at an address where the client obviously no longer resides. This method provides no notice, has no chance of alerting the client to the situation, and deprives the client of an opportunity to contest the withdrawal or to obtain new counsel to preserve his or her rights. This court will not authorize spurious or “sham” service.
In any event, in the circumstance in which the client cannot be located, a showing of some degree of diligence to uncover the whereabouts of the client is required. In view of the fact that the case will enter a sort of limbo upon counsel’s withdrawal, and that ultimately the case will be dismissed if not prosecuted, serious and substantial efforts to notify the client of the application must be demonstrated.
In the present case, this court has no basis upon which to conclude that the plaintiff is residing with Lisa Wyrick, and that service upon plaintiff at her address is calculated to give him notice of the proceeding. Counsel has not provided any affidavit by any person detailing the efforts made to locate the plaintiff, or the basis for counsel’s belief that the plaintiff is residing with Lisa Wyrick. Counsel’s unsupported statements at the hearing on the record that he “knows” the client is residing with Lisa Wyrick may ultimately prove correct. The court nevertheless has no grounds for accepting counsel’s representations as bona fide.
This court also notes that some dispute appears to have arisen between counsel and the plaintiff. If this is so, then a valid basis may exist on the merits in support of the application to withdraw. The court notes, however, that the alleged dispute arose some two years ago, and that, had this application been made sooner in time, presumably the whereabouts of the plaintiff would still be known to counsel; and plaintiff would have an opportunity to oppose the application and/or obtain new counsel.
It is counsel’s burden and obligation to set forth in a reliable form the efforts made to locate the client, and the basis for any belief as to the residence of the client. The problem in this particular case (apart from ignoring the court’s directions and instructions) is that counsel never prepared an affidavit explaining the basis of his alleged knowledge that the plaintiff was residing with a paramour, and never provided details as to the efforts made to locate the client. Indeed, counsel’s attitude (which bordered on contemptuous) was that the court was *612 imposing undue requirements on counsel, and counsel seemed unwilling to justify the manner of notice which counsel had employed, demanding that the court spell out with exactness the exact manner of service which would be sufficient. Clearly it is counsel’s obligation, not the court’s, to take the necessary steps to (1) locate the client, or (2) explain the efforts undertaken in an attempt to locate the client. Counsel here did neither. The court cannot possibly fashion a method of service as is required by CPLR 321 (b) (2) unless counsel in the first instance provides the results of counsel’s investigation as to, inter alia, the present location of the client, or of his or her known relatives, employers, and others who may be able to contact the plaintiff.
Conclusion
The motion is denied with leave to renew.
Appendix A
Suggested Methodology for Conducting a Search for a Missing Person(s)
Counsel should describe the efforts made to locate missing persons in an affidavit by the person(s) conducting the search, setting forth with specificity the actions taken and persons and agencies contacted. The following sources may be checked for information in a particular case, depending on the facts presented: relatives, friends, neighbors, inquiry to present occupants of former addresses, post office (for forwarding address), churches or other community groups, Department of Motor Vehicles, Surrogate’s Court records, Social Security Administration (see attached instructions), obituary notices or death certificates, professional or trade organizations, Internet searches, Board of Elections records, correction departments: federal, state, and city, New York City Department of Probation/ New York State Division of Parole, state and local departments of Social Services, New York City Medical Examiner, and Department of Defense Web site, which provides addresses to contact in the different branches of the military (chttp:// www.defenselink.mil/faq/pis/PC04MLTR.html>, cached at http:// www. courts .state. ny.us/r eporter/web docs/US_D OD_officialsite _requests_military_mailing_addresses .htm).
Letter Forwarding — Social Security Administration
The Social Security Administration (SSA) will attempt to forward a letter to a missing person under circumstances *613 involving a matter of great importance, such as death or serious illness in the missing person’s immediate family. The circumstances must concern a matter about which the missing person is unaware and would undoubtedly want to be informed. Generally, when a son, daughter, brother, sister, or parent wishes contact, the SSA will write to the missing person, rather than forwarding a letter from the relative. There is no charge for forwarding letters that have a humanitarian purpose. However, a fee of $25 is charged when the letter is to inform the missing person of money or property due him or her. The fee is nonrefundable. The fee should be paid by check and made payable to the Social Security Administration.
A representative from SSA must read the letter to ensure that it contains nothing that could prove embarrassing to the missing person if read by a third party. SSA does not believe it would be proper to open a sealed envelope; therefore, a letter that is sent to the SSA for forwarding should be in a plain, unsealed, unstamped envelope showing only the missing person’s name. Nothing of value should be enclosed in the envelop.
It is necessary to provide the missing person’s Social Security number or identifying information in order for SSA to locate an address in SSA records. Usually, SSA will forward the letter in care of the employer who most recently reported earnings for the missing person, as SSA will only have the home address if the person is receiving Social Security benefits. SSA cannot assure that the letter will be delivered nor can SSA guarantee a reply. SSA is also unable to send a second letter.
A request to have a letter forwarded by the Social Security Administration to a missing person should be sent to: Social Security Administration, Letter Forwarding, P.O. Box 33022, Baltimore, MD 21290-3002.

 Ideally, counsel should have undertaken a diligent search before submitting the order to show cause, and the supporting papers should set forth in detail the exact nature of the search, the results thereof, and a proposed method of service. All too frequently, the order to show cause is silent as to these issues, and the court uncovers the true situation only when the order to show cause is returnable and personal service has not been effectuated. It is the court’s practice to adjourn the order to show cause and attempt to, at that juncture, ascertain the facts and fashion some means by which the client can be notified to appear.