OPINION OF THE COURT
Carol R. Edmead, J.
Plaintiff Cynthia Frenchman, as executrix of the estate of Gerald Frenchman, deceased, and Cynthia Frenchman, individually (collectively plaintiff) commenced this action against defendants, Queller, Fisher, Dienst, Serrins, Washor & Kool, LLP (Queller Fisher), Barry A. Washor, Esq. and Stephen E. Jenkins, Esq. (collectively, Queller Fisher or the Queller Fisher defendants) and Harvey F. Wachsman, Esq. (Wachsman) and Harvey F. Wachsman, M.D., J.D., LLP (collectively, the Wachsman Firm or the Wachsman Firm defendants) alleging legal malpractice.
The Wachsman Firm moves pursuant to CPLR 3211 (a) (1), (5) and (7), and Queller Fisher moves for summary judgment pursuant to CPLR 3212 to dismiss plaintiffs complaint.[1]
Background
In August of 2002, plaintiff hired Queller Fisher to represent her in a medical malpractice and wrongful death action concerning the death of her husband, Gerald Frenchman. According to Queller Fisher, Wachsman, who was then of counsel to Queller Fisher, was assigned to handle plaintiffs case.
In early 2003, the underlying action for medical malpractice was commenced naming as defendants, Westchester Medical Center, Westchester County Health Care Corporation, Richard Moggio, M.D., Robert Klein, M.D., Ron Smith, M.D., “John” Sylvan, M.D. and David Wolf, M.D.
*488 According to plaintiff, in August 2004, Wachsman informed plaintiff that he was severing his association with Queller Fisher, and would take the file in order to continue handling her case. Plaintiff sent Queller Fisher a letter dated August 6, 2004, stating,
“[I] no longer want your firm to represent me in the above-named medical malpractice case. Please cease and desist from doing any further work on my case. You are hereby discharged as my attorneys.
“I am also notifying you of my decision to have my case handled by Harvey F. Wachsman, M.D., J.D. Therefore, I am requesting that you turn over my entire file to Dr. Wachsman immediately and without delay.”
Three months later, by letter dated November 9, 2004, Wachsman informed plaintiff that he did “not feel that this is a matter [he] can continue to pursue” because, inter alia, (1) it was “difficult to establish [the decedent’s] longevity, given his recent and very significant cardiac problems” and (2) “the element of a substantial loss of income is indeed speculative.” Wachsman additionally informed plaintiff that her rights were preserved with respect to her medical malpractice action, as a summons and complaint were served. By unsigned letter dated December 8, 2004 from Wachsman’s office, plaintiff’s “entire file” was returned to plaintiff.
By notice of substitution of counsel, dated December 14, 2004, and executed by plaintiff on December 17, 2004, Queller Fisher was substituted by Kenneth H. Frenchman, Esq., plaintiff’s son, as plaintiffs counsel. Defendant Washor executed the notice of substitution of counsel on behalf of Queller Fisher. The notice was filed with the Westchester Supreme Court on January 3, 2005.
On December 24, 2004, plaintiff signed a retainer agreement with Halperin & Halperin, PC., to represent her in the medical malpractice action. The remainder of the work on the underlying action, including the ultimate four-week trial, was completed by Halperin & Halperin, PC., commencing from the date this firm took over the file until January 2008. Plaintiff prevailed in her medical malpractice action, and was awarded a sum of $1,710,000.
On December 14, 2007, plaintiff commenced this action against defendants for legal malpractice.
*489 Plaintiffs Complaint
Plaintiff alleges that defendants committed legal malpractice by failing to name all potentially liable parties in her underlying medical malpractice action. Although she ultimately prevailed in her action, plaintiff alleges that the award in the underlying action would have been significantly larger — including substantial economic damages that were not awarded by the jury because the proper parties — Drs. Howard Axelrod and Robert Belkin — who treated the decedent well before the treatment provided by the named defendants in the underlying action, were not named. The underlying complaint represented that counsel “was in possession of the relevant medical records and consulted with one or more knowledgeable physicians prior to commencing the foregoing action for medical malpractice and wrongful death.” According to plaintiff, it was argued throughout the trial of the underlying action that when decedent first presented to the named defendants, he was already extremely ill and in heart failure. Plaintiff verily believes that the reason decedent was so sick was as a direct consequence of the medical malpractice of Drs. Axelrod and Belkin. Had Drs. Axelrod and Belkin been named as defendants within the relevant statute of limitations, the underlying cause of decedent’s condition would have been before the court and the jury in the underlying action, with the likelihood of an increase in damages awarded to plaintiff.
Plaintiff alleges that defendants’ legal services were terminated on or about December 17, 2004. By the time she was able to retain Halperin & Halperin, the statute of limitations had run on the medical malpractice claims that she would have had against two additional physicians who treated her husband, and their respective practices. Plaintiff alleges that defendants acted negligently, breached their fiduciary duties to plaintiff, and breached their contract with plaintiff by virtue of the aforementioned failure to name all responsible parties in the medical malpractice action.
The Wachsman Firm’s Motion to Dismiss
The Wachsman Firm asserts that its representation of plaintiff ceased in November of 2004, when it informed plaintiff that it would no longer be representing her in the medical malpractice action. Additionally, the conclusion of its representation of plaintiff was further confirmed by letter dated December 8, 2004, which accompanied plaintiffs file that was returned by the Wachsman Firm at that time.
*490 Defendant points out that, under CPLR 214 (6), legal malpractice actions must be commenced within three years of their accrual, a standard not satisfied by plaintiff, who served defendants on December 17, 2007, more than three years after representation by defendants ceased.
Queller Fisher’s Motion for Summary Judgment
Defendant Queller Fisher argues that plaintiff’s complaint was filed after the three-year statute of limitations applicable to legal malpractice claims expired, and thus, must be dismissed as untimely. Queller Fisher asserts that its representation of plaintiff ceased in August of 2004 following plaintiff’s “cease and desist” discharging Queller Fisher as her attorneys. Said letter was acknowledged by Queller Fisher in its letter to Wachsman dated August 25, 2004. Queller Fisher points out that an action for legal malpractice accrues when the malpractice occurs, regardless of when it is discovered by the client, and that the statute of limitations is tolled while the attorney continues to represent the client on the matter that underlies the claim for malpractice. Since this continuous representation doctrine envisions a relationship “marked with trust and confidence,” the statute of limitations begins to run on a cause of action for legal malpractice when the attorney-client relationship terminates. Here, the attorney-client relationship ceased when plaintiff forwarded her “cease and desist” letter. Because the instant action was filed in December of 2007, more than three years after Queller Fisher’s representation of plaintiff was terminated, the statute of limitations has run and plaintiffs action is untimely.
Queller Fisher also argues that plaintiff cannot establish her claim for legal malpractice. Although Queller Fisher denies that it was negligent, Queller Fisher points out that damages cannot be proven because plaintiff prevailed on her medical malpractice claim by obtaining an award of $1.7 million. Further, because defendant Westchester Medical Center was found to be 60% at fault, it is responsible for the entire amount of the award. Given that a verdict was rendered in favor of the plaintiff and said verdict is collectible, plaintiff cannot prove that any actual damages were sustained, let alone that any negligence on the part of Queller Fisher was a proximate cause of a loss.
Queller Fisher also submits a limited opposition to the motion by the Wachsman Firm. Queller Fisher served an answer, which includes a cross claim against the Wachsman Firm seek *491 ing an apportionment of liability. Thus, if the court grants the motion of the Wachsman Firm and dismisses the complaint, Queller Fisher’s cross claim against Wachsman must then be treated as a third-party complaint as the defense of the statute of limitations clearly does not apply to the claim of Queller Fisher.
Plaintiffs Opposition
Plaintiff asserts that the date on which her representation by defendants ended and questions regarding the sustained damages are triable issues of fact that should be presented to a jury.
As to the Wachsman Firm, it cannot be stated with authority that its representation of plaintiff ended when it claims it did. Although the Wachsman Firm claims that its representation ended in November 2004, when a letter was sent to plaintiff stating that it would be making a motion to withdraw as counsel, an attorney cannot simply walk away from a case, but must obtain the court’s permission to do so. Indeed, the Wachsman Firm failed to make the motion to withdraw. Nor did the Wachsman Firm execute a consent to change attorney in which they were discharged from representing the plaintiff. Inasmuch as the Wachsman Firm failed to take the proper steps in order to cease representation of plaintiff, it cannot be said that it terminated the attorney-client relationship in November 2004.
Also, the unsigned letter drafted by a paralegal purporting to transmit plaintiffs file to the plaintiff, also did not terminate representation. Simply returning the file to the client in a case which was already active and pending before a trial court does not terminate the attorney-client relationship.
Furthermore, even if returning the file to plaintiff would somehow serve to terminate the attorney-client relationship, the Wachsman Firm simply purports to have mailed out the file on December 8, 2004, but makes no offer of proof as to when the file was actually physically received by plaintiff. If in fact this court were to consider the standard provided for service of a summons and complaint by mail, the CPLR allows for an additional 10 days to answer if the summons and complaint were served by mail. In this case, the additional 10 days tacked on due to the fact that the file as mailed would leave the plaintiff in possession of the file on December 18, 2004. It cannot be assumed that the Wachsman Firm’s representation of plaintiff ended until, at the very least, that date.
Moreover, the Wachsman Firm neglected to deliver to this court a copy of their closing statement filed with the Office of *492 Court Administration, which would necessarily have specifically set forth when the end of representation occurred. A closing statement form would necessarily have been filed by the Wachsman Firm with the Judicial Conference upon the conclusion of their representation of plaintiff.
Thus, since the Wachsman Firm (1) never served or filed a consent to change attorney, (2) never served or filed a motion to withdraw as counsel and (3) never served or filed a closing statement with the Judicial Conference, its representation of plaintiff surely did not cease until the properly executed consent to change attorney was filed with the County Clerk of Westchester on January 3, 2005. Accordingly, the motion by the Wachsman Firm must be denied, inasmuch as their representation of plaintiff did not terminate until, at the earliest, December 17, 2004. As such, plaintiffs action for legal malpractice filed on December 14, 2007 falls well within the applicable three-year statute of limitations.
As to Queller Fisher, the above reasons also preclude summary judgment in its favor. As set forth above, Washor executed a consent to change attorney on behalf of Queller Fisher transferring the underlying case to plaintiff’s son Kenneth Frenchman on or after December 17, 2004. The execution of such document on or after December 17, 2004 entirely belies Queller Fisher’s assertions that its representation of plaintiff ended in August 2004. A consent to change attorney would not have been requested or given if in fact said firm was no longer the attorney of record for the plaintiff as of December 17, 2004. If a consent to change attorney had been tendered when the case was transferred to the Wachsman Firm in August 2004, then the subsequent consent to change attorney to transfer the case should have necessarily been signed by the Wachsman Firm. Nor do Queller Fisher or Washor and Jenkins offer any other documentary evidence as to the discontinuance of their representation of plaintiff such as a closing statement. It should be noted that the consent to change attorney executed by the Wachsman Firm was only first filed with the County Clerk, Westchester County on January 5, 2005.
Furthermore, that plaintiff prevailed in the underlying case at trial does not undermine her legal malpractice claim as Queller Fisher suggests. Queller Fisher improperly assumes that the award in the underlying action would have been the same if all of the proper parties were originally sued, which it is submitted is not the case herein. In fact, plaintiff verily believes that the *493 award by the jury in the underlying action would have been significantly higher had Drs. Axelrod and Belkin been named as defendants in the original lawsuit. When decedent first presented to the named defendants, he was already extremely ill and in heart failure, which was a direct consequence of the medical malpractice of Drs. Axelrod and Belkin. Had Drs. Axelrod and Belkin been named as defendants, the underlying cause of decedent’s condition would have been before the court and the jury in the underlying action, with the likelihood of an increase in damages awarded to plaintiff.
Queller Fisher Opposition to Wachsman Firm’s Motion
Queller Fisher points out that its answer includes a cross claim seeking an apportionment of liability against the Wachsman Firm. Thus, argues Queller Fisher, in the event this court grants the Wachsman Firm’s motion to dismiss the complaint, the cross claim by Queller Fisher must then be treated as a third-party complaint, as the defense of the statute of limitations clearly does not apply to Queller Fisher’s claim against the Wachsman Firm.
Wachsman Firm’s Reply
Plaintiff clearly admits that she received the November 9, 2004 letter from Wachsman, advising plaintiff that “he could not continue representing her in this matter.” Moreover, plaintiff clearly admits that she began to “search for new counsel” at such time. Further, plaintiff does not dispute that the Wachsman Firm returned the entire file to plaintiff on December 8, 2004. Therefore, the Wachsman Firm’s representation of plaintiff concluded in November 2004, and such conclusion was further confirmed by letter dated December 8, 2004. Plaintiffs argument that the Wachsman Firm’s representation continued until December 17, 2004, the date she signed the consent to change attorney form, is unsupported by New York law. The doctrine of continuous representation applies until the client is on notice that the attorney is no longer addressing his or her legal needs, and such notice need not be in the form of a motion to withdraw, but instead must be reasonably sufficient to advise the client that the attorney will no longer be pursuing the client’s matter. Therefore, even assuming plaintiff did not execute the consent to change attorney until December 17, 2004, her claims are still time-barred.
Any negligence by the Wachsman Firm, the existence of which is denied, would have been completed by November 2004, at the *494 latest, when the Wachsman Firm advised plaintiff that it would no longer be representing her. Plaintiffs claim for legal malpractice, therefore, has been time-barred since at least November 2007. As the summons and complaint in the instant action was filed on December 14, 2007, plaintiffs legal malpractice claim is time-barred as a matter of law.
Wachsman Firm’s Reply to Queller Fisher
The Wachsman Firm’s motion did not address Queller Fisher’s cross claim because it had not been made against the Wachsman Firm until after the instant motion was made. Nevertheless, Queller Fisher’s “Affirmation in Limited Opposition” was untimely and improperly served (by fax) on Monday, September 29, 2008, which was only two days before the return date of Queller Fisher’s motion. Thus, such opposition should be treated as a nullity, as it should have been served on or before September 24, 2008.
Moreover, Queller Fisher’s cross claim, like most such cross claims, should not survive the dismissal of the main claim. In the ordinary course of events, cross claims should be dismissed when the main claim is dismissed. Thus, the verified complaint, as well as Queller Fisher’s cross claim, should be dismissed in their entirety, with prejudice.
Queller Fisher’s Reply
Plaintiffs claim that the lack of a formal substitution somehow serves as proof of continuous representation on the part of Queller Fisher is flawed. Plaintiff fails to address the August 9, 2004 letter, transmitted by the Wachsman Firm, which discharges Queller Fisher as her attorneys. It is clear that, at that point, an attorney-client relationship between the plaintiff and Queller Fisher no longer existed. Here, plaintiff informed Queller Fisher in no uncertain terms that she wished for the Wachsman Firm to represent her in the underlying action and that Queller Fisher was discharged as her attorney. Thus, it was clear to all involved in the underlying matter that the Wachsman Firm and not Queller Fisher was representing the plaintiff as of August 2004. The fact that no substitution of attorneys had been later filed with the court is of no moment. Since the plaintiff had terminated the relationship between her and Queller Fisher in August 2004, the statute of limitations expired in August 2007. The instant action, therefore, is time-barred.
Furthermore, the plaintiff submits no proof that any action by Queller Fisher was a proximate cause of any damage suf *495 fered by the plaintiff as a result of the underlying action. Plaintiff concedes that a jury verdict was rendered in her favor. Athough plaintiff points to the trial of the underlying action as proof of her allegations, she fails to annex any portion of the transcript of said trial. In addition, the plaintiff also fails to set forth an affidavit by a physician which states that the physicians not joined in the underlying action were negligent. There is also no proof that the joining of the other physicians would have led to an increased damages award. Thus, not only is the instant action time-barred, there is absolutely no proof demonstrating that Queller Fisher committed legal malpractice in the underlying action.
Analysis
Motion to Dismiss
Pursuant to CPLR 3211 (a) (5), a “party may move for judgment dismissing one or more causes of action asserted against him on the ground that: . . . the cause of action may not be maintained because of . . .[the] statute of limitations.”[2]
Summary Judgment
It is well settled that where a defendant is the proponent of a motion for summary judgment, the defendant must establish that the “cause of action . . . has no merit” (CPLR 3212 [b]), sufficient to warrant the court as a matter of law to direct judgment in his or her favor (Bush v St. Clare’s Hosp., 82 NY2d 738, 739 [1993]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Wright v National Amusements, Inc., 2003 NY Slip Op 51390[U] [Sup Ct, Bronx County 2003]). This standard requires that the proponent of a motion for summary judgment make a prima facie showing of entitlement to judgment as a *496 matter of law, by advancing sufficient “evidentiary proof in admissible form” to demonstrate the absence of any material issues of fact (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Silverman v Perlbinder, 307 AD2d 230 [1st Dept 2003]). Thus, the motion must be supported “by affidavit [from a person having knowledge of the facts], by a copy of the pleadings and by other available proof, such as depositions” (CPLR 3212 [b]).
Alternatively, to defeat a motion for summary judgment, the opposing party must show facts sufficient to require a trial of any issue of fact (CPLR 3212 [b]). Thus, where the proponent of the motion makes a prima facie showing of entitlement to summary judgment, the burden shifts to the party opposing the motion to demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action, or to tender an acceptable excuse for his or her failure to do so (Vermette v Kenworth Truck Co., 68 NY2d 714, 717 [1986]; Zuckerman v City of New York, 49 NY2d at 560, 562; Forrest v Jewish Guild for Blind, 309 AD2d 546 [1st Dept 2003]). Like the proponent of the motion, the party opposing the motion must set forth evidentiary proof in admissible form in support of his or her claim that material triable issues of fact exist (Zuckerman at 562). The opponent “must assemble and lay bare its affirmative proof to demonstrate that genuine triable issues of fact exist” and “the issue must be shown to be real, not feigned since a sham or frivolous issue will not preclude summary relief’ (Kornfeld v NRX Tech., 93 AD2d 772, 773 [1st Dept 1983], affd 62 NY2d 686 [1984]).
Statute of Limitations
The statute of limitations for a legal malpractice action is three years (CPLR 214 [6]). This action was commenced on December 14, 2007 when the complaint was filed (CPLR 203 [c]). The alleged malpractice herein is the Wachsman Firm’s failure to name additional parties as defendants in the underlying action. Thus, defendant, as the movant, must establish that any alleged malpractice did not occur during the period of the Wachsman Firm’s representation of the plaintiff. Accordingly, any claim for legal malpractice which accrued prior to December 14, 2004 would be barred.
As to the Wachsman Firm, the Wachsman Firm argues that plaintiffs claim for legal malpractice accrued in November 2004, when Wachsman advised plaintiff of his unwillingness to pursue *497 her underlying lawsuit. Plaintiff contends that the cause of action accrued on December 14, 2004, when the Wachsman Firm signed the consent to change attorney, or on January 3, 2005 when same was filed. Based on the undisputed facts of this action, the instant legal malpractice action is time-barred since the plaintiff commenced this action more than three years after her attorney-client relationship with the defendant ended (Shivers v Siegel, 11 AD3d 447 [2d Dept 2004], lv denied 5 NY3d 717 [2005]).
It is undisputed that, in November of 2004, the Wachsman Firm informed plaintiff in writing that it was not pursuing the underlying medical malpractice action. After explaining in his letter to plaintiff the weaknesses in plaintiffs underlying action, Wachsman continued in pertinent part:
“I do not feel that this is a matter I can continue to pursue. Consequently I will be making a Motion To Withdraw in the matter. . . .
“Last week I received an Order from Judge John LaCava dated October 27, 2004 that requires all depositions to be completed before December 30, 2004. A copy of said Order is enclosed for your review. In light of this notice to you of my intention to withdraw from representation, I encourage you to seek other counsel immediately. For all of the reasons I have discussed hereinabove, I sincerely regret that I cannot continue to represent you in this matter.” (Emphasis added.)
Plaintiff concedes receiving this letter in her affidavit (¶ 4), wherein she states
“I received contact from Mr. Wachsman at some point in November, 2004 advising me that he no longer wished to handle my case. His letter to me stated that he was unable to locate medical experts to prove my case, even though he was sure that there was a departure. This information was imparted to me sometime in November of 2004.” (Emphasis added.)
Plaintiff further stated that after Wachsman “abandoned” her case, she “began to search for a new counsel to represent [her] in the underlying medical malpractice case” (plaintiffs affidavit ¶ 6 [emphasis added]). Neither plaintiffs affidavit nor the record indicates that Wachsman intended to or in fact performed any legal services for plaintiff, or made plaintiff aware of any additional services rendered by him on her behalf, subsequent *498 to her receipt of his letter in November 2004. Plaintiff failed to indicate that she continued to rely, depend, or trust the Wachsman Firm to represent her interests after receiving the November 9, 2004 letter.
As to plaintiffs reliance on the continuous representation doctrine, the court considers the following:
“The continuous representation doctrine serves to toll the statute of limitations on a claim for legal malpractice while the attorney continues to represent the client in the same matter in which the malpractice occurred. ... A client, having reposed trust in the legal professional, cannot be expected to question the attorney’s performance while it is still in progress. Even if the client has come to doubt the attorney’s competence, requiring the client to bring suit while the services are still being rendered would destroy the lawyer-client relationship. . . . The tolling of the statute of limitations also provides an opportunity for the attorney to seek to rectify her own error. The toll ceases to be operative, of course, when the representation in the particular matter comes to an end.” (Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C214:6, at 168 [2003 ed].)
The “continuous representation doctrine tolls the statute of limitations . . . where there is a mutual understanding of the need for further representation on the specific subject matter underlying the malpractice claim” (Zorn v Gilbert, 8 NY3d 933, 934 [2007], quoting McCoy v Feinman, 99 NY2d 295, 306 [2002]; see also Shumsky v Eisenstein, 96 NY2d 164, 167-168 [2001]). The application of the continuous representation doctrine in an action for attorney malpractice “envisions a relationship between the parties that is marked with trust and confidence. It is a relationship which is not sporadic but developing and involves a continuity of the professional services from which the alleged malpractice stems” (Muller v Sturman, 79 AD2d 482, 486 [4th Dept 1981]; see Henry v Leeds & Morelli, 4 AD3d 229 [1st Dept 2004]). “For the continuous representation doctrine to apply . . . there must be clear indicia of an ongoing, continuous, developing, and dependant relationship between the client and the attorney” (Luk Lamellen U. Kupplungbau GmbH v Lerner, 166 AD2d 505, 506 [2d Dept 1990]; Gotay v Breitbart, 58 AD3d 25 [1st Dept 2008]; see Muller v Sturman, 79 AD2d at 485 [in cases applying the continuous representation doctrine to at *499 torney malpractice, “there are clear indicia of an ongoing, continuous, developing and dependent relationship between the client and the attorney often involving an attempt by the attorney to rectify an alleged act of malpractice”]).
Yet, even when further representation concerning the specific matter in which the attorney allegedly committed the complained of malpractice is needed and contemplated by the client, the continuous representation toll nonetheless ends once the client is informed or otherwise put on notice of the attorney’s withdrawal from representation (Shumsky at 170-171 [continuous representation doctrine tolled the limitations period for plaintiffs’ malpractice claim until plaintiffs were put on notice by defendant’s failure to return calls that he withdrew from representing them]).
Essentially, under the continuous representation doctrine, a legal malpractice claim against an attorney brought three years after its accrual is time-barred, unless the statute of limitations is tolled by the continuous representation rule. It operates under the assumption that a certain act of malpractice occurred beyond three years prior to the institution of the action against the offending attorney, and yet, the limitations period is tolled because the attorney continued to represent the affected client. In any case, when applied to attorney malpractice, the accrual date of the cause of action is fixed when the attorney-client relationship ceases (Baker’s Serv. v Robinson, 85 AD2d 811 [3d Dept 1981]).
The matter Aaron v Roemer, Wallens & Mineaux (272 AD2d 752 [3d Dept 2000], lv dismissed 96 NY2d 730 [2001]) is instructive.
In Aaron, a law firm undertook to represent the plaintiff in defense of a federal suit. In July 1995, the firm served an answer and an amended answer, which omitted a statute of limitations defense. Thereafter, the attorney-client relationship deteriorated due to fee issues and other disagreements. On October 24, 1995, the law firm faxed a letter to the plaintiff stating that by noon of the following day it would mail a letter to District Court seeking permission to withdraw as his attorneys. When the firm made a motion to withdraw, the client advised the court in writing on November 8, 1995 that he would not contest the withdrawal, stating that “this now fractured relationship” could not be mended (272 AD2d at 753). The plaintiff also stated that he was seeking new counsel. On November 10, 1995, the plaintiff sent a letter to the law firm asking for a meeting to “finalize” *500 his relationship with the firm (id.). Notwithstanding the pending motion to withdraw, on November 15, 1995, the firm signed a stipulation with opposing counsel in the federal suit extending the time to respond with discovery. Finally, on November 17, 1995, the court signed an order finding grounds warranting withdrawal and permitting the law firm to withdraw. At some point, the plaintiff retained new counsel. Following trial in April 1998, damages were assessed against the plaintiff in the federal action.
Three years after the law firm withdrew, on November 17, 1998, the client commenced the malpractice action against the law firm, alleging that it was negligent in failing to plead the affirmative defense in the federal action. The law firm moved for summary judgment dismissing the complaint based on the three-year statute of limitations defense. The Supreme Court denied the law firm’s motion on the ground that the attorney-client relationship between the law firm and the plaintiff did not terminate until November 17, 1995, when the court issued the order permitting the law firm to withdraw as counsel, and that, therefore, the action was timely commenced. On appeal, the Appellate Division reversed, based on the particular facts presented.
The Appellate Division noted that the alleged legal malpractice occurred in July and September 1995, more than three years before commencement of the action, and thus, the action was time-barred unless the statute of limitations was tolled by the continuous representation rule. Plaintiffs letter evidenced that no later than November 8, 1995, he perceived that the relationship with his attorneys had been irretrievably broken. His lack of confidence in the law firm was also demonstrated by his complaint to District Court concerning the inclusion of “sensitive documents” in the law firm’s motion to withdraw (272 AD2d at 755). The Appellate Division found that
“[t]he mere facts that plaintiff was not yet represented by another attorney, that defendant [subsequently] signed a stipulation identifying himself as plaintiff’s attorney on November 15, 1995 and that defendant was not formally permitted to withdraw until November 17, 1995, fail to establish that plaintiff’s trust and confidence in defendants continued or was restored after November 8, 1995, particularly since plaintiff was then unaware of the latter two facts.” (Id. [emphasis added].)
*501 Under such
“special circumstances, where the attorney promptly moves to withdraw and the client acknowledges in writing an irreparable deterioration of the attorney-client relationship, we conclude that the relationship necessary to invoke the continuous treatment rule did not persist until formal termination of the nominal representation by defendants, but rather ceased with the disruption of the client’s trust and reliance prior to November 8, 1995.” {Id. [emphasis added].)
That the Wachsman Firm (1) never served or filed a consent to change attorney, (2) never served or filed a motion to withdraw as counsel and (3) never served or filed a closing statement with the Judicial Conference, as plaintiff asserts, is inconsequential (see Gotay v Breitbart, 58 AD3d at 30 [action was time-barred as against the plaintiff’s second set of attorneys, “Breitbart,” although her third set of attorneys, “HHM,” “was never formally substituted for Breitbart as counsel” (emphasis added)]).
As plaintiff suggests, CPLR 321 (b) (2) provides that an attorney of record may withdraw or be changed by order of the court in which the action is pending, upon motion on such notice to the client of the withdrawing attorney. Thus, when withdrawing from representation, an attorney is required to obtain the consent of the client or obtain an order of the court upon motion and reasonable notice to the client (see CPLR 321 [b] [2]; Rules of App Div, 1st Dept [22 NYCRR] § 604.1 [d] [6]; Day v Davis, 17 Misc 3d 1138[A], 2007 NY Slip Op 52337[U] [Sup Ct, Kings County 2007]). An attorney “does not have an unfettered right to unilaterally withdraw” as counsel, and “[g]ood cause is required, to be determined, ultimately, by the court” upon motion by said counsel (Benefield v City of New York, 14 Misc 3d 603, 606 [Sup Ct, Bronx County 2006]; Countryman v Watertown Hous. Auth., 13 Misc 3d 632, 633 [Sup Ct, Jefferson County 2006] [“the fact that a lawsuit is of questionable liability, limited damages, and a likely unfavorable trial result is not the type of impairment of the attorney-client relationship that permits withdrawal of counsel”]). However, the absence of a formal substitution or withdrawal of counsel pursuant to CPLR 321 (b) is not dispositive on the issue of whether the attorney continued to represent the client (Leffler v Mills, 285 AD2d 774 [3d Dept 2001]). Although an attorney cannot “unilaterally terminate an attorney-client relationship simply *502 by failing to perform services expressly or impliedly authorized by his clients . . . , that relationship does not continue indefinitely simply because there has been no formal termination” (Leffler v Mills, 285 AD2d at 777, quoting Baker’s Serv. v Robinson, 85 AD2d at 813).
However, just as the court’s order of withdrawal in Aaron did not mark the end of the representation for purposes of the continuous representation toll, which court order is required under CPLR 321 (b), this court finds that a motion, which is also so required, need not be made in order to “mark” the end of an attorney’s representation of a client. The toll in Aaron came to an end no later than November 8, 1995, when it became clear that the client no longer reposed trust or confidence in the attorneys and the deteriorated relationship was beyond repair. As the order of withdrawal was a mere formality, so would any motion to withdraw under these circumstances. The relationship between plaintiff and the Wachsman Firm had already come to an end for purposes of the toll even though the client had not yet retained a new attorney as of November 2004, and even though the Wachsman Firm signed the consent to change attorney on December 14, 2004.
Thus, the failure of the Wachsman Firm to seek leave to withdraw as counsel, in and of itself, is not a basis to apply the continuous representation doctrine to the circumstances herein, where plaintiff acknowledges receipt of the Wachsman Firm’s notice of termination of their relationship, where plaintiff considered the Wachsman Firm to have “abandoned” her action, and where plaintiff began seeking new counsel, all in November 2004.
Further, any failure of the Wachsman Firm to prove “when the file was actually physically received by plaintiff’ is likewise inconsequential, given that plaintiff was clearly on notice that the Wachsman Firm was no longer representing her after November 2004. In any event, not only does plaintiff acknowledge receipt of the file, she does not dispute receipt of the letter sent on December 8, 2004 on the Wachman Firm’s letterhead, indicating Wachsman’s intent to return the file to her possession. And, there is no indication that plaintiff believed that the Wachsman Firm would continue to represent her interests until she physically “received” her file.
Therefore, applying the principles above, the action against the Wachsman Firm is untimely, and hereby dismissed pursuant to CPLR 3211 (a) (5) as against said defendants.
*503 In light of this finding, the court does not reach the merits of defendants’ motion to dismiss based on the alleged failure to state a cause of action.
As to Queller Fisher, the instant legal malpractice cause of action is likewise time-barred, since the plaintiff commenced the action more than three years after her attorney-client relationship with Queller Fisher ended.
It is undisputed that Queller Fisher was retained in 2002, and that in August 2004, plaintiff expressly “discharged” Queller Fisher as her counsel. It is uncontested plaintiff informed Queller Fisher that its legal services were no longer needed. Indeed, plaintiff specifically requested, in writing, that Queller Fisher cease all legal services on her behalf, and that it transfer her file to the Wachsman Firm. Clearly, plaintiff terminated her relationship with Queller Fisher, and expressly indicated her desire to depend on the legal services of another firm, to wit: the Wachsman Firm. Plaintiff’s affidavit bears no indication that she communicated with or intended for Queller Fisher to pursue her claim, or indicates that Queller Fisher gave her any reason to believe that it was continuing to represent her in any manner subsequent to her discharge of Queller Fisher. There is simply no indicia in the record that either Queller Fisher or plaintiff were under any understanding that Queller Fisher would continue to represent her interests in her underlying action subsequent to her discharge letter of August 2004. Therefore, plaintiff’s legal malpractice claim accrued no later than August 2004, when she discharged the defendant as her attorney (Shivers v Siegel, 11 AD3d 447 [2004], supra, citing Daniels v Debit, 299 AD2d 310 [2002]).
Nor is there is any indication in the record that Queller Fisher performed any legal services on plaintiffs behalf, or continued to represent plaintiff in the underlying action in any manner, beyond the date that plaintiff discharged Queller Fisher, i.e., August 2004. It is uncontested that after three months, in November 2004, Wachsman informed plaintiff that he no longer wished to continue handling plaintiffs case. Wachsman’s letter indicates that the Wachsman Firm, and not Queller Fisher, had been working on plaintiffs case. Therefore, it cannot be said that the statute of limitations was tolled subsequent to plaintiff’s termination of Queller Fisher in August 2004 (see Gilbert Props, v Millstein, 40 AD2d 100 [1st Dept 1972] [in action alleging that the attorney proceeded against the wrong parties, the statute of limitations “defense (could) not be stricken *504 on the basis that the accrual of plaintiffs cause of action was suspended during a continuance of the attorney-client relationship. The defendant’s retainer by the plaintiff was terminated in 1966 and there (was) no claim by plaintiff that the defendant continued to represent it in the litigation or in any other manner within a period of three years prior to the commencement of the action”]).
Plaintiffs reliance on the fact that the notice of substitution of counsel (or consent to change attorney) was finally executed by plaintiff on December 17, 2004, and substituted Frenchman for Queller Fisher, as opposed to Wachsman, as her counsel, is misplaced. The formality of executing such a notice or consent to change attorney arises from CPLR 321, which provides, in part as follows:
“(b) Change or withdrawal of attorney. 1. Unless the party is a person specified in section 1201 [infant, etc., not applicable herein], an attorney of record may be changed by filing with the clerk a consent to the change signed by the retiring attorney and signed and acknowledged by the party. Notice of such change of attorney shall be given to the attorneys for all parties in the action or, if a party appears without an attorney, to the party.”
The purpose of CPLR 321 (b) is “to afford protection to adverse parties, by eliminating disputes and uncertainty as to whether and when the authority of an attorney representing an opponent terminated,” and it “has generally been construed to establish the authority of discharged counsel as to adverse parties and not as to the very party who discharged the attorney” (MacArthur v Hall, McNicol, Hamilton & Clark, 217 AD2d 429, 429-430 [1st Dept 1995]).
Therefore, that the notice of substitution of counsel between Queller Fisher and Frenchman was not signed until December 17, 2004 does not, in and of itself, serve as a basis to toll the statute of limitations under the continuous representation doctrine, since it had been made clear, by plaintiffs own letter to Queller Fisher, that Wachsman replaced Queller Fisher as counsel in August 2004 (see e.g. Gotay v Breitbart, 58 AD3d at 30 [finding plaintiff’s action as time-barred as against her second set of attorneys “Breitbart,” because, although her third set of attorneys, “HHM,” “was never formally substituted for Breitbart as counsel, it was clear to all parties involved that plaintiff had retained HHM to represent her in the underlying *505 medical malpractice litigation” (emphasis added)], citing MacArthur v Hall, McNicol, Hamilton & Clark, 217 AD2d 429, 429 [1995] [“notwithstanding the failure to comply with CPLR 321 (b), defendant (attorney) was under no duty to continue litigating the assigned action on plaintiffs behalf, the assignment being clear that plaintiff had retained another attorney for that purpose and that defendant had consented to the substitution”]).
Having failed to raise a triable issue of fact to overcome Queller Fisher’s showing that the action is time-barred as against Queller Fisher as a matter of law, plaintiff’s action is also dismissed as to these defendants.
Conclusion
Based on the foregoing, it is hereby ordered that the branch of the motion by defendants Harvey F. Wachsman, Esq. and Harvey F. Wachsman, M.D., J.D., LLP pursuant to CPLR 3211 (a) (1) and (7) dismissing plaintiffs complaint is denied; and it is further ordered that the branch of the motion by defendants Harvey F. Wachsman, Esq. and Harvey F. Wachsman, M.D., J.D., LLP pursuant to CPLR 3211 (a) (5) is granted, and the complaint as against said defendants is dismissed; and it is further ordered that the motion by defendants Queller, Fisher, Dienst, Serrins, Washor & Kool, LLf Barry A. Washor, Esq., and Stephen E. Jenkins, Esq., pursuant to CPLR 3212 for summary judgment in their favor and against plaintiff is granted, and the complaint against said defendants is dismissed.

. Defendants’ motions bearing sequence numbers 001 and 002 are consolidated for joint disposition.

. Pursuant to CPLR 3211 (a) (1), a party may also move for judgment dismissing one or more causes of action on the ground that “a defense is founded upon documentary evidence.” The test on a CPLR 3211 (a) (1) motion is whether the documentary evidence submitted “conclusively establishes a defense to the asserted claims as a matter of law” (Scott v Bell Atl. Corp., 282 AD2d 180, 183 [1st Dept 2001], quoting Leon v Martinez, 84 NY2d 83, 88 [1994]; IMO Indus. v Anderson Kill & Olick, 267 AD2d 10, 11 [1st Dept 1999]). Here, the evidence on which the Wachsman Firm defendants rely to establish its statute of limitations defense, to wit: affidavits and letters, do not constitute documentary evidence for purposes of CPLR 3211 (a) (1) dismissal (see Realty Invs. of USA v Bhaidaswala, 254 AD2d 603 [3d Dept 1998] [holding that consideration of listing agreement, letter of intent and addenda, and affidavit was error on CPLR 3211 (a) (1) motion]; Kearins v Gruberg, McKay & Stone, 2 Misc 3d 1001[A], 2004 NY Slip Op 50065[U] [Sup Ct, Bronx County 2004]). Therefore, dismissal on this ground is denied.